# Exhibit 5

# Law and Economics

## An Introductory Analysis

Second Edition

Werner Z. Hirsch

Case 7:14-cv-00180-BR Document 92-5 Filed 02/19/18 Page 2 of 5

# LAW AND ECONOMICS
## *An Introductory Analysis*

## *Second Edition*

WERNER Z. HIRSCH

*Department of Economics*
*University of California, Los Angeles*
*Los Angeles, California*

ACADEMIC PRESS, INC.

*Harcourt Brace Jovanovich, Publishers*

Boston San Diego New York
Berkeley London Sydney
Tokyo Toronto

Copyright © 1979, 1988 by Academic Press, Inc.
All rights reserved.
No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording, or any information storage and retrieval system, without permission in writing from the publisher.

ACADEMIC PRESS, INC.
1250 Sixth Avenue, San Diego, CA 92101

*United Kingdom Edition published by*
ACADEMIC PRESS INC. (LONDON) LTD.
24-28 Oval Road, London NW1 7DX

Library of Congress Cataloging-in-Publication Data

Hirsch, Werner Zvi, Date
Law and economics: an introductory analysis / Werner Z. Hirsch.—
2nd ed.
p. cm.
Bibliography: p.
Includes index.
ISBN 0-12-349481-8
1. Law—United States. 2. Economics. I. Title.
KF385.H55 1988
349.73—dc19
[347.3] 87-22677
CIP

88 89 90 91 9 8 7 6 5 4 3 2 1
Printed in the United States of America

> The Justs argue their property has been severely depreciated in value. But this depreciation of value is not based on the use of the land in its natural state but on what the land would be worth if it could be filled and used for the location of a dwelling. While loss of value is to be considered in determining whether a restriction is a constructive taking, value based on changing the character of the land at the expense of harm to public rights is not an essential factor or controlling.[49]

## A COST-BENEFIT FRAMEWORK

The preceding section has shown how the courts have been struggling to determine whether a nuisance is present—whether a given land use is unreasonable for an area—and, if so, whether the resulting interference is substantial. Similarly, the courts have found it difficult to decide what would constitute a fair remedy under such circumstances. The resolution of these issues can be facilitated by applying a powerful framework developed by economists—cost–benefit analysis. Moreover, there are indications that courts have implicitly applied such an analysis.

Cost–benefit analysis works in the following manner: The more relevant environmental alternatives are identified and for each alternative all benefits and costs are listed, evaluated to obtain dollar figures, and adjusted by a discount rate to determine their present value. The present values of the social costs and benefits of each alternative are compared, and the one with the highest overall excess of social benefits over social costs in terms of present values is chosen. It is the socially optimal alternative.

In most instances, these steps are not easy to carry out. Difficulties exist because of serious evaluation problems, absence of clear-cut guidelines for the selection of discount rates, and a host of theoretical issues.[50]

## THE COURT'S TREATMENT OF ENVIRONMENTAL PROBLEMS, RECONSIDERED

A judge deciding an environmental law case may be considered to act as the owner of all the property rights and entitlements affected by the environmental question under consideration. His role is to seek a solution that optimizes the aggregate value of the environment's use insofar as all individuals are affected, thereby maximizing total social welfare.

[49] 56 Wis. 2d 23, 201 N.W.2d 771.

[50] For a summary of some of the problems common to most of welfare economics, see John V. Krutilla and Anthony C. Fisher, *The Economics of Natural Environments* (Baltimore: Johns Hopkins, 1975): 28–35.