IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-180-BR

| | |
|---|---|
| JOYCE MCKIVER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| MURPHY-BROWN LLC, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on plaintiffs' motion to exclude or limit the expert testimony of Jennifer L. Clancy, Ph.D. (DE # 98.) Defendant has filed a response in opposition to the motion. (DE # 122.)

Initially, the court considers whether Dr. Clancy is a proper rebuttal expert and, if so, whether her supplemental report is truly supplemental. Dr. Clancy is a microbiologist who defendant retained "to provide [an] expert opinion on environmental sampling and analysis," (DE # 122-2, at 3), and designated as an expert to rebut plaintiffs' case-in-chief expert, Shane Rogers, Ph.D. Plaintiffs argue that, in reality, Dr. Clancy is a case-in-chief expert, and, therefore, defendant failed to timely disclose her as such. Plaintiffs' argument rests on their contention that Dr. Clancy's principal report addresses an expected and anticipated portion of plaintiffs' case-in-chief, namely Dr. Rogers' pollution sampling and testing.

> Rebuttal reports are "intended solely to contradict or rebut evidence on the same subject matter identified by another party . . ." Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal evidence is defined as evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party." *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001). "A party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Wise v. C. R. Bard, Inc.*, No. 2:12-CV-01378, 2015 WL 461484, at *2 (S.D.W. Va. Feb. 3, 2015). Thus, "[r]ebuttal experts cannot put forth their own theories; they must

> restrict their testimony to attacking the theories offered by the adversary's experts." *Boles v. United States*, No. 1:13-CV-489, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015). . . .
>
> [R]ebuttal reports "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) (quoting *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013)). "Expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." *Boles*, 2015 WL 1508857, at *2 (quoting *Withrow*, 967 F. Supp. 2d at 1002); *E. Bridge Lofts Prop. Owners Ass'n, Inc. v. Crum & Forster Specialty Ins. Co.*, No. 2:14-CV-2567-RMG, 2015 WL 12831677, at *1 (D.S.C. July 9, 2015).

<u>WPS Inc. v. Am. Honda Motor Co. Inc.</u>, No. 3:16-CV-2525-CMC, 2017 WL 4216159, at *2 (D.S.C. Sept. 22, 2017) (most alterations added). "In addition, persuasive authority counsels that, if the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." <u>Boles</u>, 2015 WL 1508857, at *2 (internal quotation marks, citation, and alteration omitted).

As for Dr. Clancy's opinions regarding Dr. Rogers' methods of field sampling and data collection, the court agrees with defendant that those opinions are properly characterized as rebuttal opinions. In her initial report, Dr. Clancy directly addresses the methods Dr. Rogers used. While she may have observed Dr. Rogers and his team sampling during site visits, she could not fully form her opinions in this regard until Dr. Rogers produced his report and the data underlying it.

As for Dr. Clancy's opinion that "Dr. Rogers has erroneously concluded that Murphy-Brown farms are the source of significant odors and harmful pollutants impacting the lives of the plaintiffs," (DE # 122-2, at 28), it is beyond the bounds of permissible rebuttal testimony. Such

evidence directly supports defendant's case-in-chief theory that the Kinlaw farm is not the source of the odors and pollutants about which plaintiffs complain and is thus within the province of a case-in-chief expert. Cf. Scott v. Clarke, No. 3:12-CV-00036, 2014 WL 5386882, at *3-4 (W.D. Va. Oct. 22, 2014) (where the plaintiffs alleged the defendants were deliberately indifferent to constitutionally deficient medical care at a correctional center and the defendants offered medical expert testimony to support their position that the medical care provided was constitutionally adequate, holding such testimony "would be admissible only as evidence constituting a fundamental part of the [defendants'] case-in-chief; not as 'rebuttal' to the opinions offered by the Plaintiffs' expert."). Because defendant did not designate Dr. Clancy as a case-in-chief expert, the court will exclude at trial any of her opinions supporting defendant's case-in-chief.

Turning to whether Dr. Clancy properly supplemented her initial report,

[u]nder Rule 26(e), litigants have a duty to supplement or correct discovery responses that are incomplete or incorrect in some material respect, and with respect to expert reports, a party's duty to supplement extends both to information included in the report and to information provided during the expert's deposition. Fed. R. Civ. P. 26(e).

> Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure is incorrect or incomplete and, therefore, misleading. It does not cover failures or omission because the expert did an inadequate or incomplete preparation. To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek [sic] havoc in docket control and amount to unlimited expert opinion preparation.

*Palmetto Pharm. LLC v. AstraZeneca Pharm. LP*, No. 2:11-CV-00807-SB-JDA, 2012 WL 4369259, at *2 (D.S.C. July 18, 2012) (citing *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). "Accordingly, Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Id.*

WPS, 2017 WL 4216159, at *2.

At the time of Dr. Clancy's initial report, Dr. Rogers had not been deposed. Dr. Clancy acknowledges her supplemental report is not based on any new facts. (DE # 99-6, at 26.) Instead, it is based on Dr. Rogers' opinions and statements in his deposition testimony. (Id.) According to Dr. Clancy, because "Dr. Rogers provided additional or different opinions than what were included in his expert report, or expounded, explained, or provided greater detail to opinions that were included in his report," she supplemented her report to address these items. (DE # 122-7, at 3.) Because information from Dr. Rogers' deposition was not available to Dr. Clancy at the time of her initial report, the court concludes that her supplemental report was proper under Rule 26(e) and should not be stricken.

Plaintiffs also seek to exclude or limit Dr. Clancy's testimony pursuant to Federal Rules of Evidence 104(a) and 702 and in accordance with Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Under Rule 104(a), "[t]he court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible." Further, the court operates as a gatekeeper under Rule 702 and Daubert in regards to expert testimony.

> [A] district court's gatekeeping responsibility [is] to "ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand."
> Relevant evidence, of course, is evidence that helps "the trier of fact to understand the evidence or to determine a fact in issue." To be relevant under *Daubert*, the proposed expert testimony must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
> With respect to reliability, the district court must ensure that the proffered expert opinion is "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Daubert* offered a number of guideposts to help a district court determine if expert testimony is sufficiently reliable to be admissible. First, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." A second question to be considered by a district court is "whether the theory or technique has been subjected to peer review and publication." Publication regarding the theory bears upon peer review; "[t]he fact

4

of publication (or lack thereof) in a peer reviewed journal will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." Third, "in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error." Fourth, despite the displacement of *Frye*, "'general acceptance'" is nonetheless relevant to the reliability inquiry. "Widespread acceptance can be an important factor in ruling particular evidence admissible, and a known technique which has been able to attract only minimal support with the community may properly be viewed with skepticism." *Daubert's* list of relevant considerations is not exhaustive; indeed, the Court has cautioned that this "list of specific factors neither necessarily nor exclusively applies to all experts or in every case," and that a trial court has "broad latitude" to determine whether these factors are "reasonable measures of reliability in a particular case."

Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir.), cert. denied, 137 S. Ct. 2250, 198 L. Ed. 2d 680 (2017) (citations omitted) (most alterations in original).

Plaintiffs claim that Dr. Clancy should be precluded from providing any opinions regarding Pig2Bac as an indicator of pig fecal DNA and Dr. Rogers' sampling analysis and methodology. The court concludes that Dr. Clancy is qualified to testify about Pig2Bac and that the other issues plaintiffs raise go primarily to the weight of her testimony rather than its admissibility. However, the court will limit her opinions to those that are rebuttal, as discussed above.

For the foregoing reasons, plaintiffs' motion to exclude or limit the expert testimony of Dr. Clancy is ALLOWED IN PART and DENIED IN PART.

This 17 April 2018.

_____
W. Earl Britt
Senior U.S. District Judge