IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-180-BR

| | |
|---|---|
| JOYCE MCKIVER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| MURPHY-BROWN LLC, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on plaintiffs' motion to exclude or limit the expert testimony of Pamela Dalton, Ph.D. pursuant to Federal Rules of Evidence 104 and 702 and in accordance with <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993). (DE # 95.) Defendant has filed a response in opposition to the motion. (DE # 113.)

Dr. Dalton is defendant's designated odor expert. During a period in the Fall of 2016, she oversaw an odor monitoring study regarding the hog farm operations at Kinlaw Farm, the hog operation at issue in this action. Persons serving as monitors used a field olfactometer, the Nasal Ranger,[1] to monitor for odor frequency and intensity. Using the Nasal Ranger, if the monitor perceived any odor, s/he recorded it as a dilution to threshold ratio. According to Dr. Dalton,

> [i]n states where odor regulations exist based on the use of a Nasal Ranger™ or similar device, the threshold for flagging an elevated or objectionable odor (along with other temporal requirements) has been commonly determined to be 7:1 or above. It is generally agreed that unless an odor can be detected at a 7:1 dilution or higher, it is not an objectionable odor.

---

[1] "The Nasal Ranger™ allows ambient air to be sniffed at varying dilutions with clean air in order to quantify the intensity of any odor." (DE # 96-1, at 4.)

(DE # 96-1, at 4.)  Based on this 7:1 standard and the data collected during odor monitoring, Dr. Dalton opines "to a reasonable degree of scientific certainty, [] that the normal operating activities at the farm do not produce odors that travel offsite at an intensity, frequency or duration that would be considered a nuisance level at the Plaintiffs' properties."  (Id. at 5.)  Dr. Dalton also oversaw odor monitoring studies at other farms in related cases and states "the entirety of the data collected represent a very small number of potential objectionable odor events."  (Id. at 9.)  Finally, Dr. Dalton details the biology of olfaction and factors that influence individual perception of and response to odor and explains why self-report of odors is often unreliable.

Under Rule 104(a), "[t]he court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible."  Further, the court operates as a gatekeeper under Rule 702 and Daubert in regards to expert testimony.

> [A] district court's gatekeeping responsibility [is] to "ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand."
> Relevant evidence, of course, is evidence that helps "the trier of fact to understand the evidence or to determine a fact in issue." To be relevant under *Daubert*, the proposed expert testimony must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility."

Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir.), cert. denied, 137 S. Ct. 2250, 198 L. Ed. 2d 680 (2017) (citations omitted) (most alterations in original).

Plaintiffs argue that Dr. Dalton's opinion that the farm does not produce odors that would be a nuisance at plaintiffs' properties should be excluded because it embraces the ultimate issue and is not based on the proper legal standard in North Carolina.  Plaintiffs also take issue with Dr. Dalton's odor study results based on the use of the Nasal Ranger and the 7:1 standard.  As for Dr. Dalton's opinion about the unreliability of self-report of odors, plaintiffs contend she is

2

impermissibly opining on plaintiffs' credibility. For the most part, the court agrees with plaintiffs that Dr. Dalton's testimony on these issues should be excluded.

As Dr. Dalton recognizes, "[t]he perception of odors is a highly subjective experience . . . . ." (DE # 96-1, at 6 (citation omitted).) Even though the use of the Nasal Ranger enables one to quantify odor, the intensity of the odor still derives from the monitor's perception of the odor. Given that fact along with the fact that North Carolina (unlike some other jurisdictions) has not adopted a dilution to threshold ratio or any other objective standard for assessing whether an odor is objectionable, Dr. Dalton's testimony about her odor monitoring study of Kinlaw Farm and its results would not be helpful to the jury. In fact, such testimony would have a strong likelihood of confusing or misleading the jury. It follows that Dr. Dalton's opinion based on the data collected from that study would not be helpful to the jury and would be confusing. Accordingly, the court excludes Dr. Dalton's testimony about the odor monitoring study and her opinion regarding the lack of odor nuisance emanating from Kinlaw Farm.

The court agrees with plaintiffs that Dr. Dalton cannot opine on plaintiffs' credibility. See United States v. Lespier, 725 F.3d 437, 449 (4th Cir. 2013) ("[I]in the absence of unusual circumstances, Rule 702 renders inadmissible expert testimony on issues of witness credibility."). However, her opinion about the unreliability of self-report of odor does not invade the jury's province to assess plaintiffs' credibility, and the court will not exclude this opinion testimony.[2]

For the foregoing reasons, plaintiffs' motion to exclude or limit the expert testimony of

---

[2] Plaintiffs do not otherwise object to Dr. Dalton's testimony regarding the biology of olfaction and factors that influence individual perception of and response to odor.

Dr. Dalton is ALLOWED IN PART and DENIED IN PART.

This 19 April 2018.

_____
W. Earl Britt
Senior U.S. District Judge